UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------X
UNITED STATES OF AMERICA

                                                    **MEMORANDUM & ORDER**
– against –                                      03-CR-567

ABDIRASHID MOHAMED HASSAN,

                Defendant.
-----------------------------------------------------------X
GARAUFIS, United States District Judge

       A jury found the defendant Abdirashid Mohamed Hassan guilty of conspiracy to import a controlled substance; conspiracy to distribute and possess with intent to distribute a controlled substance; conspiracy to commit money laundering; and money laundering. The Defendant now moves for a judgment of acquittal or, in the alternative, a new trial, pursuant to Rules 29(c) and 33 of the Federal Rules of Criminal Procedure, respectively. For the reasons stated below, the Defendants' motions are DENIED.

## I.    The Trial

       Central to this case is a plant called khat (formally known as *catha edulis*) which is grown in East Africa and the Arabian Peninsula. The plant's leaves are chewed or brewed in tea and, once ingested, produce a stimulant effect on the central nervous system. When the leaves are first cut, they contain a chemical stimulant called cathinone. Over a period of approximately 48-72 hours, the cathinone in the plant degrades into cathine, a milder stimulant.

       On April 16, 2003, the Defendant was arrested after attempting to pick up khat from an office building located at 19 West 22nd Street in New York City. The arrest was the result of a United States Immigration and Customs Enforcement ("ICE") investigation into seizures of khat

from UPS Express mail packages destined for New York. (See T. 52-57)[1]. During the course of its investigation, ICE agents found that many seized parcels containing khat were being shipped to this office building. An individual interviewed at the building alerted agents to a package containing khat stored inside a locked closet. The Defendant was arrested when he arrived at the office building to retrieve that package. (Id.).

During questioning following his arrest, the Defendant informed agents that he had previously been stopped before by United States Customs officials at JFK Airport in connection with retrieving khat. (T. 41-4, 56). The Defendant consented to a search of his backpack, in which financial records, United States Postal Service receipts and airway bills, and over $12,000.00 in cash was recovered. (T. 57). The Defendant also consented to a search of his apartment at 49 Nixon Court in Brooklyn, New York. There, agents seized money order receipts, UPS airway bills, and a luggage tag. (T. 259-64).

Based on this investigation, the Defendant was identified as a conspirator in a scheme to import a controlled substance (i.e. cathinone contained in khat) into the United States and to launder money obtained from khat sales overseas. The Defendant was charged in a forty-four count superseding Indictment in 2005 with, inter alia, (1) one count of conspiracy to import cathinone, in violation of 21 U.S.C. § 963; one count of conspiracy to distribute and possess with intent to distribute cathinone, in violation of 21 U.S.C. § 846; (3) one count of conspiracy to launder money, in violation of 18 U.S.C. § 1956(h); and forty-four counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i).

The relevant evidence offered at trial is as follows. Senior Special Agent Paul Kastava of

---

[1] "T" refers to the trial transcript.

the Department of Homeland Security, Office of Professional Responsibility testified that on April 4, 2001, he encountered the Defendant after receiving a call reporting the seizure of two shipments of khat at a cargo facility at JFK Airport, where Kastava works. (T. 41- 44). At the facility, Kastava retrieved a pick-up order and an airway bill for the packages containing khat that had been presented to customs officials by the Defendant and another individual. Kastava interviewed the Defendant. The Defendant explained that he had been asked by an acquaintance to pick up the shipments and that he thought khat was legal in the United States. Kastava informed the Defendant that khat was not legal in this country. (T. 48). The Defendant was not arrested.

The next Prosecution witness was Stephen Lee, a special agent with the Narcotics Division of the ICE. Lee testified about the circumstances of the Defendant's arrest on April 16, 2003, and the subsequent search of his backpack, the details of which were described above. (See T. 52-64).

Patrick Fuller, a cooperating witness, next testified regarding the Defendant's use of counterfeit United States Customs release stamps. Fuller pled guilty in October 2004 to conspiracy to import cathinone. He admitted to using counterfeit customs stamps in order to smuggle khat into the country while employed as an entry writer for a customs house broker. (T. 79). Utilizing fake customs stamps on packages containing the plant leaves, khat smugglers were able to bypass Customs inspection and retrieve cargo more quickly. (T.82). Fuller testified to meeting the Defendant[2] and an associate at a hotel near JFK Airport in the late 1990s, and

---

[2] Fuller identified the Defendant in the courtroom, but indicated that he had known him by the name of Hadgi. (T. 82-3).

agreeing to stamp airway bills for khat shipments in return for $1,500.00 per shipment. (T. 83-6). Fuller assisted the Defendant with several shipments of khat per week throughout the late 1990s. (T. 100). The boxes were falsely labeled as containing printed matter, such as magazines, and were addressed to random businesses chosen from the phonebook. (T. 100, 104). The Defendant also sometimes used Europeans as couriers to smuggle khat into the United States in their luggage. (T. 104-5).

In March of 2002, Fuller and the Defendant traveled to London to visit "Omar," the Defendant's khat supplier.[3] Fuller testified that he and Omar discussed more expedient ways to ship khat into the United States and that Omar requested that Fuller stop dealing with the Defendant because the Defendant "talked too much." (T. 96-7).

Fuller's testimony was corroborated at trial by physical evidence seized from the Defendant at the time of his arrest and the testimony of several Customs and Border Protection Officers. A luggage tag that was found at the Defendant's apartment, labeled with the name "Stuart Ramshaw" and a specific address in England, was admitted into evidence. (T. 262; GX 23-A).[4] On January 4, 2003, Customs Officer Ralph Casaffo performed a secondary examination of a British citizen named Stuart Ramshaw which led to the seizure of approximately 105.5 pounds of khat from his luggage. (T. 136-9, 262-4; GX 23-B, 23-E).

Date books seized from the Defendant at the time of his arrest, containing the names of British citizens who were alleged khat couriers, were admitted into evidence. (GX 8-A, 8-B). Under the date of November 8, 1999, the name "Lightbody" appeared, a name which

---

[3] Omar was identified as "Omar Hasi." (T. 98).

[4] "GX" refers to Government Exhibit.

4

corresponds to customs records indicating that a British citizen named Robert Lightbody entered the United States through JFK Airport on that date. (T. 267-70; GX 23-H). Customs Officer Robert Suess testified that in June of 2000, he performed a secondary inspection of Robert Lightbody and seized 135 pounds of khat from his luggage. (T. 131-2; GX 22-A, 22-B). The Government also presented, through the testimony of a Special Agent with the ICE, evidence of the Defendant's khat transactions between 1999 and 2003. This evidence included notebooks and datebooks seized from the Defendant's backpack, which contained records of courier's names and the names of co-conspirators, and which also reflected numerous Western Union and money order transfers. (T. 265-72; GX 8-A, 8-B, 8-C, 8-D).

Brian Hall, a chemist from the Drug Enforcement Administration ("DEA") testified that he tested the khat found in the two UPS packages seized shortly after the Defendant's arrest, which had been shipped to the building where the Defendant was arrested. (T. 164-9; GX 4, 5). Hall concluded that the samples of khat contained cathinone and cathine. (T. 164-9; GX 4, 5).

Testimony of a cooperating witness by the name of Mohammed Hassan further established the Defendant's involvement in khat transactions in the United States. Hassan testified that he was introduced to the Defendant by his employer, Ahmed Mussa.[5] (T. 228-9). Hassan testified that Mussa was involved in importing khat, and evidence was admitted that in May 2002, the Defendant signed a bond for Mussa after Mussa was arrested for importing cathinone. (T. 227-32; GX 9-A, 9-B).

Finally, with respect to the money laundering and related conspiracy to launder money

---

[5] Hassan knew the Defendant as "Liban" and identified "Liban" as the Defendant after Hassan was arrested for importing cathinone in 2004. At trial, however, Hassan did not identify the Defendant. (T. 239-41, 303-4; GX 17).

charges, the Government presented evidence that between December 1998 and May 2000, the Defendant purchased numerous money orders, ranging in value from $500 to $700, which were paid to "O. Hashi," referring to the Defendant's khat supplier, Omar Hashi, endorsed by Hashi and deposited with various overseas banks. (GX 10-A through 10-OO). In addition to the forty money orders endorsed by Hashi, the Government also presented four UPS money order receipts seized from the Defendant's backpack when he was arrested, each of which reflects a money order purchased in New York on November 19, 2002. (GX 35-A, 35-B, 35-C, 35-D).

**II.     Defendant's Rule 29 Motion for Judgment of Acquittal**

The Defendant makes two arguments supporting a judgment of acquittal: (1) that his conviction violates the Due Process Clause; and (2) that the evidence presented at trial was legally insufficient to support his conviction.

*A.     Background: The Statutory Framework of Khat Regulation*

A cursory understanding of the statutory framework surrounding the regulation of khat and cathinone in this country will greatly inform one's understanding of this case. It is illegal under the Controlled Substance Act ("CSA") to knowingly possess a controlled substance with intent to distribute. 21 U.S.C. § 841(a)(1). A "controlled substance" is defined as one listed in Schedules I through IV of the CSA. See 21 U.S.C. § 802(6) (defining controlled substance); 21 U.S.C. § 812 (codifying the schedules). Section 812 does not mention either cathinone or cathine as controlled substances in any Schedule. However, in regulations promulgated after passage of the CSA and published in the Code of Federal Regulations, the DEA has expressly classified cathinone as a Schedule I controlled substance. 21 C.F.R. § 1308.11(f)(2). Cathine is similarly classified in the C.F.R. as a Schedule IV controlled substance. 21 C.F.R. § 1308.14(e).

6

As these regulations have the force of law, cathinone and cathine are controlled substances within the meaning of the CSA. See 21 U.S.C. § 811(a) (authorizing Attorney General to add substances to CSA Schedules; 28 C.F.R. § 0.100(b) (delegating authority to the DEA).

B.  *Due Process Claim*

The Defendant's Due Process claim is premised on the contention that the vagueness of the text of the CSA with respect to khat and cathinone denied him fair warning that his conduct was illegal. The Constitutional underpinnings of this claim lie in the fact that the criminal law is not meant to be a trap for the innocent. To comport with the Due Process clause, a criminal statute must adequately describe a particular offense to "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." United States v. Harriss, 347 U.S. 612, 617 (1954); see also United States v. Ansaldi, 371 F.3d 118, 122-23 (2d Cir. 2004). To that end, the Defendant claims that the CSA is unconstitutionally vague because, while *cathinone* is listed as a Schedule I controlled substance, *khat* is not specifically named in either Title 21 of the United States Code or in the Code of Federal Regulations.

In recent years, several Circuit Courts of Appeal have been presented this argument by criminal defendants, like Mr. Hassan, who have been found guilty of drug offenses in connection with khat. See e.g., United States v. Caseer, 399 F.3d 828 (6th Cir. 2005); United States v, Sheikh, 367 F.3d 756 (8th Cir. 2004); United States v. Hussein, 351 F.3d 9 (1st Cir. 2003). The Second Circuit has not yet had the opportunity to rule on this issue, and thus I look to other circuits for guidance. In particular, I find the First Circuit's reasoning in Hussein compelling. See Hussein, 351 F.3d at 13-17 (rejecting appellant's due process claim based on lack of fair warning).

7

The fair warning claim in this case, notably, is dissimilar to the typical fair warning claim. Typically, a fair warning claim is brought to challenge imposition of a criminal law whose statutory language is alleged to be vague or ambiguous. See e.g., United States. v. Dauray, 215 F.3d 257, 264 (2d Cir. 2000). Here, however, the text of the CSA is unambiguous. The relevant provisions clearly state that it is illegal to import or possess "any material, compound, mixture, or preparation which contains any quantity of . . . cathinone." 21 C.F.R. 1308.11(f); 21 U.S.C. § 841(a)(1). Admittedly, the statute is not explicit in declaring that khat is a "material containing cathinone." Nonetheless, "the fact that the architects of the law might, without difficulty, have chosen clearer and more precise language equally capable of achieving the end which they sought does not mean that the statute which they in fact drafted is unconstitutionally vague." Hussein, 351 F.3d at 15 (quoting United States v. Powell, 423 U.S. 87, 94 (1974) (internal quotations omitted)). Due Process is not offended by the mere fact that the statute does not specifically prohibit "khat" or "khat containing cathinone." See Hussein, 351 F.3d at 15; Sheikh, 367 F.3d at 764.

I am mindful of the fact that the CSA *could* be more clear in informing persons that possession of khat containing cathinone is illegal in this country. This is of particular import given that khat is a substance that is ingested as regularly in East African countries (such as Somalia, where the Defendant is from) as coffee is ingested in the United States. See Caseer, 399 F.3d at 853-4 (Holschuh, J., concurring in part and dissenting in part) (discussing the widespread use of khat in East Africa, the Arabian Peninsula, and the Middle East). However, I am equally mindful of the fact that the Supreme Court has made it clear that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." Id. at 839

(internal quotation and citations omitted).

Mindful both of the complicated statutory framework at issue here and the obligation to find a federal statute permissible when possible, the court's concerns are alleviated by the scienter requirement of the statute. In a khat prosecution of this nature, the government is required to prove beyond a reasonable that the Defendant had actual knowledge that khat, the material he possessed and distributed, contains a controlled substance. This scienter requirement mitigates any vagueness in the law. See Caseer, 399 F.3d at 839; Hussein, 351 F.3d at 14; see also, Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc., 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.").

The scienter requirement has been sufficiently proven in this case; the Defendant knew the material he was importing contained a controlled substance. He was put on notice of this fact first when stopped in April 2001 at JFK Airport. At that time, Special Agent Kastava informed the Defendant that khat is an illegal substance in the United States. (See T. 48). In May 2002, the Defendant was put on notice again when he appeared in court to sign an appearance bond on behalf of Ahmed Mussa after Mussa had been arrested for khat importation. (See T. 299). Moreover, as will be discussed below in greater detail in the analysis of the Defendant's claim of insufficient evidence, there was ample additional evidence from which a reasonable inference could be drawn that the Defendant was well aware of the controlled substance contained within khat.

Therefore, because the Defendant was properly found to have actual knowledge that khat contains a controlled substance, and because the text of the CSA statute is sufficiently clear, the

Defendant has been provided fair warning. His conviction, thus, does not violate the Due Process Clause and his motion for judgment of acquittal on this ground is denied.

## C. *Insufficient Evidence Claim*

The Defendant also contends that a judgment of acquittal is warranted because there was insufficient evidence to support his convictions.

### 1. *Cathinone Conspiracy Counts*

With respect to the convictions of conspiracy to import a controlled substance and conspiracy to distribute and possess with intent to distribute a controlled substance, the Defendant's argues that there is insufficient evidence to prove beyond a reasonable doubt that he "knowingly"conspired to import, distribute and possess with intent to distribute cathinone specifically. Rather, the Defendant argues, the proof shows only that he knowingly conspired to smuggle a plant (i.e. khat) into the country.[6]

The defendant "bears a heavy burden" on this claim as the court "must credit every inference that the jury may have drawn in favor of the government." United States v. Finley, 245 F.3d 199, 202-3 (2d Cir. 2001) (internal quotation and citation omitted). "The jury's verdict must be sustained, if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (emphasis in original). In reviewing the sufficiency of evidence underlying a conviction, the court is reminded that it is the jury's duty alone to make inferences from the evidence. See e.g., United States v. Jackson, 335 F.3d 170, 180 (2d Cir.

---

[6] The Defendant challenges the sufficiency of the evidence only with respect the specific intent element. He does not challenge the evidence supporting the Defendant's involvement in the conspiracy to import, possess and distribute khat. See Defendant's Reply at 1 ("It is indisputed that the defendant arranged with others to import khat into the United States over a period of years.").

10

2003). Where "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000). In short, as the Second Circuit has put it: "the court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Guadagna, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation and citation omitted).

Here, the Defendant has failed to meet this burden. Sufficient evidence was presented at trial from which the jury could have inferred that the Defendant knew that khat contained a controlled substance, whether or not he knew that cathinone was the specific substance. See Hussein, 351 F.3d at 17 (noting that the "government must show that the defendant knew both that he possessed khat and that his khat contained cathinone"); see also, United States v. Morales, 577 F.2d 769, 776 (2d Cir. 1978) ("a defendant need not know the exact nature of a drug in his possession . . . it is sufficient that he be aware that he possesses some controlled substance.").

Evidence presented at trial showed that the defendant expended great effort to conceal the khat he imported into the United States from law enforcement, namely by paying for counterfeit customs stamps, falsely labeling shipments as cards or magazines, and using couriers to transport khat in their luggage. While it is *possible*, as the Defendant contends, that these efforts were made in order to evade U.S. Agricultural regulations, which prohibit the transport of foreign plants into this country, the jury was free to infer from this evidence that the Defendant acted with the knowledge that khat contained a controlled substance illegal in this country. See United States v. Martinez, 54 F.3d 1040, 1043 (2d Cir. 1995) (stating that "it is the task of the

11

jury, not the court, to choose among competing inferences . . . [m]oreover, the jury's verdict may be based entirely on circumstantial evidence.").

Furthermore, evidence at trial showed the Defendant made efforts to import khat into the United States as quickly as possible by use of the counterfeit customs stamps, and express and urgent deliveries through UPS. Coupled with testimony that the cathinone found in khat degrades within a few days, the jury was free to infer that the Defendant's efforts towards expediency were undertaken because he knew the potency of the khat would degrade with time. And finally, there was evidence presented that the Defendant was informed on two occasions that khat contains a controlled substance. First, when the Defendant was stopped at JFK Airport in April of 2001, Special Agent Kastava notified the Defendant that khat was illegal in the United States. (T. 48). Additionally, in May 2002, the Defendant signed an appearance bond on behalf of Ahmed Mussa, who had been arrested for khat importation. (T. 299; GX 9-A, 9-B). From this evidence, the jury could have rationally concluded that the Defendant knew of khat's illegal ingredient.

For the aforementioned reasons, the court finds that a rational trier of fact could have found beyond a reasonable doubt that the Defendant knowingly conspired to import, distribute, and possess with intent to distribute a controlled substance. Therefore, the Defendant's Rule 29 motion for a judgment of acquittal on the grounds of insufficient evidence is denied.

### 2. *Conspiring to Launder Money and Money Laundering Counts*

With respect to both the conspiracy and substantive money laundering counts, the Defendant claims that there is insufficient evidence to support his convictions. The Defendant does not dispute that he was involved in financial transactions concerning khat. He argues,

however, that the Government has not proven all elements of the crimes charged beyond a reasonable doubt.  To sustain a guilty conviction on a money laundering conspiracy charge, the Government must prove both that the property involved in the financial transactions was the proceeds of specified unlawful activity, in this case, narcotics trafficking, and that the Defendant acted with the intent to promote the carrying on of specified unlawful activity.  18 U.S.C. §§ 1956(h), 1956(a)(1)(A)(I) and 1956(a)(1)(B)(i); United States v. Henry, 325 F.3d 93 (2d Cir. 2003).   The Defendant argues that there has been insufficient evidence to prove beyond a reasonable doubt (1) that the property involved in the financial transactions was the proceeds of narcotics trafficking, and (2) that the Defendant knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

Through the testimony of cooperating witnesses, law enforcement officials, and by physical evidence obtained from the Defendant's person and home, the Government presented evidence from which the jury certainly could have concluded that the Defendant was involved in khat trafficking.  The Government admitted notebooks of the Defendant, which recorded his khat sales. (GX 8-A, 8-B, 8-C, 8-D).  The Government also admitted into evidence the Defendant's social security statements and federal income tax returns to show that the value of the money orders the Defendant purchased were in excess of his declared income.  (GX 10-A through 10-OO, 15, 16, 18-A through 18-E).  From this evidence, the jury could have properly inferred that the Defendant used the unlawful proceeds of khat deals to purchase the money orders. Moreover, with respect to proof that the Defendant knew that these financial transactions involved proceeds of some form of unlawful activity, this could have been rationally inferred from the Defendant's efforts to conceal his actions from law enforcement.  See Henry, 325 F.3d

13

at 104.

Upon review, this court finds that the Government submitted sufficient evidence from which a rational trier of fact could have found the Defendant guilty of conspiracy to commit money laundering and money laundering. The Defendant's Rule 29 motion for judgment of acquittal is therefore denied.

## III. Defendant's Rule 33 Motion for a New Trial

The Defendant alternatively argues that he should be afforded a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. The Defendant submits two grounds in support of this motion: (1) that the Government deliberately violated an in limine order of this court entered at the beginning of trial, (see T. 4-6); and (2) that the jury instruction was improper. The Court finds both of these arguments to be without merit.

Rule 33 permits a court to order a new trial if "the interest of justice so requires." Fed. R. Crim. P. 33(a). The Second Circuit has stated that, even in a case where the court determines there has been perjured testimony given at trial, "the test is whether 'it would be a manifest injustice to let the guilty verdict stand.'" United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) (citing United States v. Reed, 875 F.2d 107, 114 (7th Cir.1989)). The circuit court further explained: "Although a trial court has broader discretion to grant a new trial pursuant to Rule 33 than to grant a motion for a judgment of acquittal pursuant to Fed.R.Crim.P. 29, where the truth of the prosecution's evidence must be assumed, that discretion should be exercised sparingly." Id. (internal citation omitted).

### A. *The In Limine Order*

Here, the Defendant does not assert that untruthful testimony – in the usual sense -- was

given, but rather that some testimony was misleading with respect to the relationship between cathinone, cathine and khat, and in violation of this court's in limine order imposed to clarify that relationship. The Defendant moved before the start of trial to preclude evidence that khat and cathine are controlled substances under the laws of the United States. I ruled at that time that the Government would be permitted to present evidence that (1) khat may contain cathinone, which is a Schedule I controlled substance; and (2) that cathine is an active ingredient of khat. (T. 4-6.) By implication, the Government would not be permitted to introduce evidence that khat per se is a controlled substance. See Argaw v. Ashcroft, 395 F.3d 521 (4th Cir. 2005) (holding that khat is not a controlled substance for the purposes of stripping the Appellate Court of jurisdiction to review a Board of Immigration Appeals removal order imposed against an alien removable for committing importation of a controlled substance).

The Defendant argues on this motion that the in limine order was not only violated on several occasions, but that the Government also intentionally did not counsel its witnesses to follow the order while on the stand. For example, the Defendant points to the testimony of Special Agent Kastava, who testified that he expressed to the Defendant in April 2001 when he encountered him at JFK Airport that khat was illegal in this country. (See T. 45). Another example of a violation which the Defendant points to is Patrick Fuller's testimony that he pleaded guilty to "conspiracy to import khat" (as opposed to the correct guilty plea to conspiracy to import *cathinone*). (See T. 78; see generally, Defendant's Omnibus Brief.).

To begin, the court notes that these and other examples of a similar nature to which the Defendant has drawn the court's attention, are not direct violations of the in limine order, in that the Government did not affirmatively admit evidence that khat per se is a controlled substance.

Nonetheless, even assuming that there were violations of the order, the Defendant still has not carried his burden under Rule 33 as it would not be a "manifest injustice" to let the verdict stand in this case given the substantial evidence presented at trial.

Moreover, and importantly, the Defendant failed to object during trial to the testimony of witnesses now alleged to have violated the order. The Defendant also did not request a limiting instruction on the issue. Despite the Defendant's argument to the contrary, the court finds that he has effectively waived this argument for the purposes of a Rule 33 motion.

The Defendant points the court's attention to United States v. Lewis, 651 F.2d 1163 (6th Cir. 1981), arguing that he chose not to raise objections during trial because he found himself "compelled by the government's action to make the strategic election to either aggrandize or minimize the significance of those statements, in the presence of the jury. He elected the latter course, in the event his [Rule 29] motion might be denied; and that election will not be considered a waiver." 651 F.2d at 1166-7. Notwithstanding this language, the Lewis case is not compelling. There, counsel failed to object during the testimony of a single witness who was reading directly from a memorandum used to refresh his memory. Indeed, after the witness completed his testimony, counsel immediately moved for a mistrial out of the jury's presence, which was denied. The Sixth Circuit found that the failure to object at the first moment the witness began to speak was not a waiver of the subsequent motion for acquittal. Id.

The present case, however, is quite different. Here, several witnesses testified over the course of several days, and still defense counsel did not raise the issue of violations of the in limine order. Moreover, as stated above, the alleged violations do not present adequate grounds to grant a new trial under Rule 33.

B.  *The Jury Instruction*

The Defendant's final argument is that the jury was improperly instructed, and that this error warrants the grant of a new trial. Over the Defendant's objection, the court charged the jury as follows:

> While you must find that the defendant knew it was a controlled substance he was conspiring to bring into the United States, you need not find that the defendant knew or believed that it was a drug called cathinone, as long as the government proves that he knew and intended that some controlled substance would be imported into the United States.

(T. 420). The Defendant argues that a guilty verdict can only be supported by a finding that the Defendant knew and intended specifically that the substance he imported was cathinone. This argument is without merit. As the Hussein court, faced with the analogous argument, stated: "the cases are legion that a defendant can lawfully be found guilty of having violated section 841(a)(1)[7] even if he did not know the exact nature of the drug that he possessed as long as he knew that he possessed an illegal drug." Hussein, 351 F.3d at 18 (citing cases); see also, United States v. Roberts, 363 F.3d 118, 123 n.1 (2d Cir. 2004) (citing United States v. Morales, 577 F.2d 769, 773 (2d Cir. 1978)). The Defendant's motion for a new trial on grounds of an improper jury instruction is therefore denied.

---

[7] In Hussein, the Defendant was found guilty of possessing a controlled substance in violation of 21 U.S.C. 841(a)(1). Here, Defendant Hassan was found guilty of violating sections 846 and 963, which are related conspiracy crimes concerning the importation and possession and distribution with intent to distribute a controlled substance. The legal principle, however, applies with equal force. See Patach v. United States, 1997 WL 202175, at *2 (S.D.N.Y. April, 24, 1997) (in a conspiracy to distribute a controlled substance case, stating that it is "well settled that it doesn't make any difference to guilt under the law if [the defendant] is wrong about the specific identity of the controlled substance."); see also, United States v. Brown, 862 F.2d 1033, 1037-8 (3d Cir. 1989) (finding that the reasoning employed by numerous courts with respect to drug offenses that the defendant need not know the exact nature of the drug applies by analogy to a child pornography statute with a similar scienter requirement).

**IV.     Conclusion**

For the foregoing reasons, the Defendant's motions for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure and for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure are hereby DENIED.

SO ORDERED.

Dated: October 12, 2005                                                        /s/ Nicholas Garaufis
       Brooklyn, NY                                                            Nicholas G. Garaufis
                                                                               United States District Judge